**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY LOU SHAWLEY,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-961** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Judge Nora Barry Fischer** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| Defendant. | ) | |

**OPINION**

## I.     INTRODUCTION

Plaintiff, Mary Lou Shawley ("Plaintiff") brings this action pursuant to 42 U.S.C. 405(g),
seeking review of the final determination of the Commissioner of Social Security ("Commissioner")
denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social
Security Act ("Act").   The parties have filed cross motions for summary judgment pursuant to
Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for a period of disability and DIB on August 23,
2005, alleging disability as of April 23, 2005.  (Docket No. 6 at p. 15) (hereinafter R.__ ).   On
November 28, 2006, a hearing was held in Latrobe, Pennsylvania before Administrative Law Judge
Douglas W. Abruzzi ("the ALJ").  R. 15.  Plaintiff, who was represented by counsel, appeared and
testified at the hearing.  R. 15.  Irene H. Montgomery [1], an impartial vocational expert, also testified.

---

[1] This Court notes that Ms. Montgomery's curriculum vitae, which is part of the record,
reveals that she is eminently qualified to render an opinion as a vocational rehabilitation expert in
this case.

R. 15.  On January 9, 2007, the ALJ issued a decision in which he determined that Plaintiff was not

"disabled" within the meaning of the Act.  R. 24.  The Appeals Council subsequently denied

Plaintiff's request for review, thereby making the ALJ's decision the final decision of the

commission in this case.  R. 7-10.  Plaintiff now seeks review of that decision, and the matter is

before this Court on cross-motions for summary judgment pursuant to Federal Rule of Civil

Procedure 56.

## III.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is

supported by substantial evidence.  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.

1994).  The Court may not undertake a de novo review of the Commissioner's decision or re-weigh

the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. §

405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pierce v. Underwood*, 108 S.Ct. 2541, 2545 (1988).  As long as the Commissioner's decision is

supported by substantial evidence, it cannot be set aside even if this Court "would have decided the

factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the

substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501,

503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful

activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the

claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987) (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations,

age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000) ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple Impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971). Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli v. Massanari,* 247 F.3d 34, 40 n. 4 (3d Cir. 2001), *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent

6

to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529© (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself." Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F. Supp. 648, 658 (W.D. Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her

claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present evidence to refute the claim. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992), *cert. denied* 507 U.S. 924 (1993).

## IV.    DISCUSSION

Employing the five step sequential evaluation pursuant to 20 C.F.R. § 404.1520, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 17. At step two, the ALJ found Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c): obesity; status post right hip total replacement and mild osteoarthritis of the left hip with sciatic compression. R. 17. The ALJ found that Plaintiff's leukocytosis[2] was not "severe". R. 17. At step three, the ALJ concluded that Plaintiff's impairments were not "severe" enough to meet or medically equal any of the Listed Impairments delineated in Appendix 1 to Subpart P if Part 404 of the regulations. R. 18. Proceeding to step four, in accordance with 20 C.F.R. § 404.1545, the ALJ made the following residual functional capacity assessment:

> The claimant retained the residual functional capacity to at least engage in light work with some limitations on postural maneuvers, avoid remaining in one position for prolonged periods of time, working around unprotected heights and machinery is precluded, restriction of use of her lower extremities to push and or pull, and is limited to no more than simple, routine tasks.

---

[2] An abnormally large number of leukocytes, as observed in acute infections. A white blood cell count of 10,000 or more. Williams & Wilkins, <u>Stedman's Medical Dictionary</u> 959 (26th ed. 1995).

R. 18.   Given this assessment, it was determined that Plaintiff could not return to her past relevant work, as the position of a licensed practical nurse required medium exertion and was skilled work, which exceeded Plaintiff's residual functional capacity.  R. 22.  Further, the ALJ determined that Plaintiff did not have any skills that could be transferred to other types of work within her residual functional capacity since it included no more than simple, routine tasks.  R. 22.  Ms. Montgomery's testimony further established that Plaintiff's skills could not be transferred.  R. 22.  The Court noted that Plaintiff is approaching an advanced age as she was fifty-two years of age.  R.22.  The ALJ also highlighted that Plaintiff had a high school education, one year of education at the college level, and is able to communicate in English.  R.22.  After considering Plaintiff's age, education, work experience, and residual functional capacity, Ms. Montgomery assessed that there were a significant amount of jobs that exist in the national economy that Plaintiff could perform.  R. 22. Consequently, at step five after considering the above findings, Plaintiff was not found to be "disabled" under 42 U.S.C. § (d)(1). R. 24.

In support of her motion for summary judgment, Plaintiff raises the following arguments: (1) The ALJ erred in his determination that Plaintiff's testimony concerning her impairments and their impact on her ability to work were not credible; (2) The ALJ failed to give adequate consideration to Plaintiff's leukocytosis and degenerative arthritis of her lumbosacral spine in determining step two as well as improperly rejecting medical evidence regarding the severity of these diagnoses; (3) The ALJ erred in concluding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments; and (4) the ALJ mischaracterized Plaintiff's residual functional capacity.  (Docket No. 12 at p. 3).  The

Court will address each of Plaintiff's arguments in turn.

## A. Credibility Issue

Plaintiff argues that the ALJ erred in his determination that Plaintiff's testimony concerning her impairments and their impact on her ability to work were not entirely credible. (Docket No. 12 at p. 3). Plaintiff argues that the ALJ discounted her subjective complaints and mischaracterized the record in order to decrease the severity of her symptoms, such as the inferences he made as to Plaintiff's daily activities, lifestyle, medical history, and her treatment. *Id.*

A credibility determination made by the ALJ is entitled to great deference by the district court. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). However, the ALJ's credibility determination must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7; *See Lang v. Barnhart*, No. Civ. A. 05-1497, 2006 WL 3858579, at * 10 (W.D. Pa. Dec. 6, 2006). In addition, it is clear, under the applicable regulations, that a plaintiff's activities of daily living are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. *Salles v. Commissioner of Social Sec.*, 229 Fed. Appx. 140, 146 (3d Cir. 2007).

Plaintiff admits in her brief that the ALJ's decision contained specific reasons for his credibility finding, however, Plaintiff argues that these reasons are not sufficient. (Document No.

12 at p. 9).    The ALJ determined that Plaintiff's testimony was only partially credible, after considering her description of daily activities and lifestyle, the objective medical evidence of record, and treating medical opinions regarding the severity of her conditional and functional limits. R. 20.

When comparing Plaintiff's testimony with the objective medical evidence, the ALJ discovered inconsistencies, which led to the conclusion the Plaintiff's testimony was not credible. For example, the ALJ noted that surgery was performed on Plaintiff's right hip in September 2005 and that she testified that her right hip has not been a problem since her surgery. R. 20.  However, when Plaintiff initially filed for her benefits in October 2005, she alleged pain in her right hip that radiated down her leg. R. 20.  The ALJ also noted that by October 2005, Plaintiff reported considerable relief, and was only using a cane when she was outside her home.  R.20. Further, in November and December 2005, Plaintiff could actively watch her grandchild and was only in pain when she was overdoing physical activity.  R. 20.  The ALJ further stated that Plaintiff's left hip pain was not significantly mentioned until February 2006, however, medical tests provided no evidence of fracture, dislocation, soft tissue swelling or joint space narrowing.  R. 20.

Finally, the ALJ determined that Plaintiff's testimony was only partially credible when he compared the Plaintiff's daily activities to her allegations of pain and disability.  The ALJ noted that despite Plaintiff's alleged disability and pain, she is able to dress and bathe herself, eat in restaurants, go to church, and crochet, which requires high concentration and the Plaintiff has previously denied any decrease in her ability to concentrate because of her pain. R. 20.  In addition, the record also indicates that Plaintiff is able to dust slowly, R. 256, watch television and play free cell during the day, R. 261, visit her family and friends at their houses once or twice a month, R. 262, and attend her son's school activities, such as his band banquet and football games, R. 265.

Such evidence further bolsters the ALJ's credibility finding.

However, Plaintiff also alleges that the ALJ overrode the medical opinions of her treating physician, and instead, considered her physical demeanor at the hearing as evidence to discredit her testimony. (Docket No. 12 at p. 7). The ALJ noted that it observed that Plaintiff placed very little weight on her cane when she appeared at the hearing. R. 20. However, the ALJ did not solely rely on this observation in discounting Plaintiff's credibility, but rather also considered the inconsistencies between Plaintiff's testimony and the objective medical evidence, as well as her reported daily activities. R.20. Moreover, an ALJ's findings based on credibility are to be accorded great weight and deference, particularly since he has the duty of observing the witness's demeanor and credibility at the time of the hearing. *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997)

After reviewing the ALJ's analysis against the record, the Court is not persuaded that the ALJ committed any error in his credibility determination as said determination is supported by substantial evidence.

### B. "Severe" Issue

Plaintiff argues that the ALJ failed to give adequate consideration to the effects of her diagnosed leukocytosis and degenerative arthritis of the lumbosacral spine, which are medical physical impairments, singularly and/or in correlation with the limiting effects of her other severe impairments. (Docket No. 12 at p. 9).

The ALJ found Plaintiff to be suffering from the following "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c): obesity, status post right hip total replacement and mild

osteoarthritis of the left hip with sciatic compression. R. 17. The ALJ found that Plaintiff's leukocytosis was not "severe". R. 17. The ALJ noted that although it determined Plaintiff's leukoctosis to not be "severe", all limitations resulting from both her severe and non-severe impairments, singualy and in combination, were considered when evaluating her application for disability benefits. R. 18.

A "severe" impairment is an impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520 (c). Basic work activities constitute the abilities and aptitudes necessary to do most jobs, such as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. 20 C.F.R. §§ 416.920 (c) . The claimant has the burden of showing that an impairment is severe. 20 C.F.R. §404.1520.

The Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's leukoytosis and degenerative arthritis of the lumbosacral spine were not "severe" impairments. The Plaintiff does not indicate in her brief, and the Court did not discover any evidence in the record, which showed that her leukoytosis and degenerative arthritis prevented her from performing basic work activities. Also, Plaintiff highlights that Dr. Wigle advised her that her left hip pain could be coming from her lower back, later indicating that she had always had some

13

element of back pain which was related to degenerative arthritis of her lumbosacreal spine and SI joint with referral to the left trochanter. (Docket No. 12 at p. 10; R. 193). In ruling that Plaintiff's mild osteoarthritis of the left hip[3] with sciatic compression was a "severe" impairment, the ALJ's opinion reflects his consideration of the Plaintiff's degenerative arthritis insofar as it is a cause of her left hip pain. Furthermore, in this Court's estimation, Plaintiff has suffered no prejudice because the ALJ specifically stated that he considered all of her nonsevere and severe impairments in his evaluation of whether Plaintiff qualified for disability benefits, including Plaintiff's degenerative arthritis.

### C. Medical Source Opinion

Plaintiff next argues that Dr. Dashefsky's medical opinion should have been given controlling weight pursuant to SSR 96-2. (Docket No. 12 at p. 11). The ALJ noted in its opinion that during Dr. Dashefsky's only evaluation of Plaintiff, on February 2, 2006, he indicated some tenderness along her hamstring muscles and some impairment in her range of motion. R. 21; R. 209. Dr. Dashefsky also noted that she had no other abnormalities and was not in acute distress. *Id.* Further, the ALJ considered Dr. Dashefsky's May 2006 medical assessment of Plaintiff's ability to do work related activities.[4] In this assessment, he opined that Plaintiff was able to stand and/or walk no more than 1 hour in an 8 hour work day, lifting and sitting were not affected by her impairments, and she was unable to perform postural maneuvers, but placed no other limitations on her physical or environmental functions. R. 204-209. The ALJ decided to give Dr. Dashefsky's

---

[3] Osteoarthritis is a synonym for degenerative arthritis. *Williams & Wilkins*, Stedman's Medical Dictionary 1267 (26th ed 1995).

[4] It should be noted that Dr. Dashefsky merely filled out a form and checked boxes as to Plaintiff's condition, and provided one brief comment as to what medical findings supported his assessments.

opinion limited weight because "his specialty is unknown, (he) examined the Claimant on only one occasion in February 2006" and then referred further treatment to Dr. Wigle [5], and his standing and/ or walking limitations were not well supported by his findings or the other evidence in the record. R. 21.

_____Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and it nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404. 1527 (d)(1-6). A medical opinion is also not entitled to controlling weight where it is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in the case record..." 20 C.F.R. § 404.1527(d)(2). Moreover, the Third Circuit has held that form reports are "weak" evidence when the physician's only obligation is to check a box or fill in a blank and that the reliability of such forms is "suspect" where they are unaccompanied by "thorough written reports." *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).

In the case at hand, this Court finds Plaintiff's argument to be without merit as the ALJ's findings were buttressed by more than just conflicting medical evidence. First, Dr. Dashefshky's medical opinion pertaining to Plaintiff's February 2, 2006 evaluation is inconsistent as compared to his findings exhibited on the May 2006 medical assessment form. Second, Dr. Dashesky's standing and/or walking recommendations are inadequately supported by his written notes on the May 2006 form or other evidence in the record. These recommendations can be deemed weak and suspect

---

[5] Dr. Wigle is an orthopedic surgeon. In this Court's estimation, his specialty makes him more qualified to speak to the Plaintiff's orthopedic medical problems.

because of his lack of explanation. Accordingly, after reviewing the reasoning of the ALJ, this Court agrees that Dr. Dashefsky's opinion is entitled to limited weight.

### D. List of Impairments

Plaintiff maintains that the ALJ's analysis merely represents a conclusory statement as to whether Plaintiff's impairments meet or medically equal the Listed Impairments without providing sufficient rationale for a meaningful review of this issue. (Document No. 12 at pp. 13-14**).** Further, Plaintiff contends that based in part on the ALJ's adverse credibility determination, his flawed step two analysis, and his improper rejection and/or evaluation of probative medical evidence, the ALJ erred in his conclusion that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Docket No. 12 at p. 3). Plaintiff's arguments as to credibility and the ALJ's analysis at step two have been addressed above.

The Plaintiff first argues that the ALJ failed to articulate or reference supporting medical evidence for his conclusion that Plaintiff did not have an impairment or impairments that met or equaled a listing impairment. (Docket No. 12 at p. 14). The Court finds this argument to be unpersuasive. The ALJ stated more than just a conclusory statement to explain his decision as to why Plaintiff's impairments did not meet or medically equal the impairments in Listing 1.00. For example, the ALJ stated, " the claimant's musculoskeletal impairments do not involve significant nerve compression, a severe burning sensation or painful dysesthesia, an inability to ambulate effectively, an inability to perform fine or gross movements, require reconstructive surgery, or amputation or involve any fracture or soft tissue injury." R. 18. Moreover, the ALJ explained

16

through a detailed analysis that he considered the relevant medical evidence, the Plaintiff's subjective complaints of pain, the obesity of the Plaintiff, and the opinion of the State Agency medical consultant in order to reach his conclusion. R.18-21. It should be noted that the opinion of the State Agency medical consultant was consistent with that of the ALJ, i.e., Plaintiff was capable of a range of light work. R. 21. However, although the ALJ gave some weight to this medical opinion, in forming his conclusion, he also considered that the State Agency physician was not afforded the opportunity to witness the Plaintiff at the hearing nor review the additional medical documents submitted at that time. R.21.

In Plaintiff's second argument, she contends that her impairments meet or are medically equal in severity to Listing 1.02 Major Dysfunction of a joint(s), and/or 1.04C Disorders of the Spine, and/or Obesity. (Docket No. 12 at p. 14); SSR 2-01p. This Court finds Plaintiff's argument to be without merit. Plaintiff's right hip impairment does not meet the criteria listed in this section because, as the ALJ ruled, this impairment was resolved by her surgery on September 2, 2005. R.20. In addition, Plaintiff testified that her right hip has not been a problem since her surgery. R. 251. As for Plaintiff's left hip, the medical evidence does not show that this impairment has reached the level of severity described in Listing 1.02 Major Dysfunction of a Joint.[6] An x-ray of Plaintiff's

---

[6] In order to meet the criteria in this Listing, the Plaintiff must prove: 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02 A-B (2007).

left femur taken by Dr. Depeppo reported that her bone density was normal, she had no acute fracture or dislocation, and no acute bone abnormality. R. 196. In addition, an x-ray of Plaintiff's left hip showed that her bone density was normal, she had no acute fracture or dislocation and no soft tissue swelling, although, there was joint space narrowing medially. R. 198. The ALJ's finding that Plaintiff's right and left impairments did not meet Listing 1.00 Musculoskeletal System, or any other impairment listed in 20 C.F.R. Part 404, SubPart P, Appendix I, is clearly supported by objective medical evidence. Plaintiff's argument as to Listing 1.02 is also without merit as there is no mention of gross anatomical deformity as well as any of the other requirements necessary to qualify for this Listing. 20 C.F.R.. Pt. 404, Subpt. P, App. 1. §§ 1.02 A-B (2007).

Although her brief is not specific, Plaintiff appears to argue, that her degenerative arthritis of the lumbosacral spine impairment qualifies as severe under Listing 1.04C Disorders of the Spine.[7] (Docket No. 12 at p. 14). The Plaintiff fails to point to any evidence in the record, and this Court finds no medical or other opinion evidence in the record that would satisfy the requirements necessary to meet this Listing. While Dr. Wigle assessed, and the ALJ considered, that Plaintiff does in fact have degenerative arthritis of her LS Spine and SI joint, there is no mention of a herniated

---

[7] In order to meet this Listing, Plaintiff must prove: 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ A-C (2007).

disc, spinal arachnoiditis, or the like, resulting in nerve compression that would elevate her degenerative arthritis to fall under this Listing. R. 193. Therefore, this Court finds Plaintiff's contention that her impairments meet the criteria in this Listing to be unsupported.

### E. Residual Functional Capacity

In her final argument, Plaintiff argues that the ALJ erred in determining her residual functional capacity. (Docket No. 12 at p. 19). She contends that the record supports a finding that she is disabled due to her inability to perform even a full range of sedentary activity. *Id.* As noted earlier, however, the ALJ determined that she had the following residual functional capacity:

> The claimant retained the residual functional capacity to at least engage in light work with some limitations on postural maneuvers, avoid remaining in one position for prolonged periods of time, working around unprotected heights and machinery is precluded, restriction of use of her lower extremities to push and or pull, and is limited to no more than simple, routine tasks.

R.18. The ALJ in making the determination that Plaintiff can engage in light work, realistically assessed that she could perform jobs that did not require:

> standing or walking more than four hours in an eight hour day; more than occasional use of ramps or stairs; avoids balancing, crawling or the use of ladders, ropes or scaffolds; affords a sit/stand/walk option that permits her to take four of five steps away from her workstation, during a one minute period, up to five times an hour; is limited to occasional pushing or pulling with the lower extremities, including the use of pedals, unless the pedals require less than five pounds of force to operate; does not require prolonged exposure to cold temperature extremes, extreme wetness or humidity; does not require working around dangerous, large and moving machinery or unprotected heights.

R. 18. Moreover, after taking into consideration Plaintiff's age, education, work experience, and residual functional capacity, Ms. Montgomery, a vocational expert, assessed that there were a

significant amount of jobs that exist in the national economy that Plaintiff could perform that only involved light work. R. 22. For example, the Plaintiff could perform light work as an inside cashier, a weigher or scales operator, and have the option of sedentary jobs such as, an order clerk or an addresser or sorter. R. 23.

This Court notes that the issue of Plaintiff's residual functional capacity is expressly reserved to the Commissioner. 20 C.F.R. § 404.1527 (e)(2). Although Plaintiff argues that the ALJ's determination of her residual functional capacity is erroneous because the combination of all her impairments, her use of a cane, her pain, weakness and impaired mobility limit her to no jobs she can perform in the national economy, her contentions are without merit. In addition the Court notes that an ALJ may reject an alleged limitation if there is conflicting evidence in the record. *Rutherford v. Barnhart*, 399 F.3d 546, 554-555 (3d Cir. 2005).

Accordingly, the Court finds that the Commissioner's burden at step five of the sequential evaluation process has been satisfied, and the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence for purposes of 42 U.S.C. § 405(g).

**V. Conclusion**

Based upon the evidence of record, the parties' arguments, and the supporting documents filed in support and in opposition thereto, this Court concludes that substantial evidence supports the ALJ's findings that Plaintiff was not statutorily disabled as of April 23, 2005. The decision of the ALJ denying Plaintiff's application for SSI and DIB for that period of time is affirmed.

s/ Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: January 11, 2008

cc:   All counsel of record.